IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY D. SPADONI | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EASTON AREA SCHOOL DISTRICT | : | NO. 07-5348 |
| Defendant. | : | |

**MEMORANDUM OPINION**

TIMOTHY R. RICE                                                                              February 19, 2009
U.S. MAGISTRATE JUDGE

      Plaintiff Gregory Spadoni, a school teacher with defendant Easton Area School District ("the district") between 1976 and 2008, was deployed to serve in our country's military forces at Guantanamo Bay, Cuba from April 16, 2004 to March 30, 2005.  See Stipulated Factual Record at ¶ 3, 13, Spadoni v. Easton Area Sch. Dist., No. 07-5348 (E.D. Pa. filed Oct. 24, 2008) [hereinafter Stipulated Factual Record].[1]  He alleges the district violated 38 U.S.C.A. § 4301 et seq., the Uniform Services Employment and Reemployment Rights Act of 1994 ("USERRA"), by refusing to permit him to use his accrued sick leave while on military leave and by prorating his annual salary upon his return.  See Complaint at ¶ 24, Spadoni v. Easton Area Sch. Dist., No. 07-5348 (E.D. Pa. filed Dec. 19, 2007); Brief of Plaintiff, Gregory D. Spadoni at 4, Spadoni v.

---

      [1] The parties agreed that, in lieu of trial, they would submit a stipulated factual record. On February 3, 2009, I conducted a supplemental hearing to obtain testimony and additional uncontested evidence concerning the district's formula for prorating the salary of employees on various types of extended leave.

Easton Area Sch. Dist., No. 07-5348 (E.D. Pa. filed Oct. 29, 2008) [hereinafter Spadoni's Brief].[2]
For the following reasons, I find the district did not violate USERRA because it did not deny Spadoni a benefit of employment.

## Discussion

USERRA was intended "to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301(a). It "prohibits employers . . . from discriminating on the basis of military status." Satterfield v. Borough of Schuylkill Haven, 12 F. Supp. 2d 423, 438 (E.D. Pa. 1998) (Van Antwerpen, J). To promote this laudable objective, the law provides "[a] person who is a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied . . . any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C.A. §4311(a).

An employer shall consider a person absent from employment because of uniformed services as on furlough or leave of absence, see 38 U.S.C. § 4316(b(1), and such person shall be "entitled to such other rights and benefits . . . generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence," see id. at § 4316(b)(a)(B).

Plaintiffs must establish they suffered an adverse employment action which denied them a benefit of employment. See Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 927-28 (8th Cir. 2007).

---

[2] On May 22, 2008, I granted the district's motion to dismiss Spadoni's breach of statute, breach of good faith and fair dealing, and violation of public policy and fair dealing counts. See Order, Spadoni v. Easton Area Sch. Dist., No. 07-5348 (E.D. Pa. filed May 22, 2008).

Benefits of employment include:

> any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C.A. §4303(2); accord 20 C.F.R. § 1002.1 et. seq. (regulations implemented to guide application of USERRA).

USERRA provisions are construed "liberally, in favor of the service member." Gordon v. Wawa, Inc., 388 F.3d 78, 81 (3d Cir. 2004). This is not surprising because military service ranks as one of the highest forms of public service a citizen can undertake. Thus, plaintiffs, such as Mr. Spadoni, and their families, merit the nation's gratitude for their sacrifices on our behalf, and must not endure discrimination in the workplace because of their absence while defending our nation.

If an employee is denied a benefit of employment, an employer violates USERRA "if the person's membership in the uniform services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership." 38 U.S.C.A. § 4311(c)(1); accord Gannon v. Nat'l R.R. Passenger Corp., 422 F. Supp. 2d 504, 508 (E.D. Pa. 2006) (Robreno, J.). The plaintiff bears the "initial burden of production to show that, by a preponderance of the evidence, 'the employee's military service was a substantial or motivating factor' in the adverse employment decision." Hart v. Twp. of Hillside, 228 Fed. Appx. 159, 162 (3d Cir. 2007) (quoting Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). "[T]he employer then has the opportunity to come forward

with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." Id. (quoting Sheehan, 240 F.3d at 1013).

    A.    Use of Sick Days

Spadoni alleges the district should have permitted him to use his accrued sick leave while he was on military leave. See Spadoni's Brief at 5. He alleges the accrued sick leave constituted "paid time off," which an employer must allow an employee on military leave to use. See id. By November 3, 2004, Spadoni had accrued, and he seeks payment for, 122 unused sick days. See Stipulated Factual Record at ¶ 19.

The district did not deny Spadoni a benefit of employment when it did not permit him to use his accrued sick leave while on military leave. An employer, upon request, must permit an employee to use "accrued vacation, annual or similar leave with pay during the period of service." 20 C.F.R. § 1002.153(a). Sick leave, however, is not similar to annual leave. See id. § 1002.153(a). Rather:

> an employee is not entitled to use sick leave that accrued with the civilian employer during a period of service in the uniformed services, unless the employer allows employees to use sick leave for any reason, or allows other similarly situated employees on comparable furlough or leave of absence to use accrued paid sick leave. Sick leave is usually not comparable to annual or vacation leave; it is generally intended to provide income when the employee or family member is ill and the employee is unable to work.

Id. Accordingly, an employer is required to allow an employee on military leave to use accrued sick leave only if it allows employees to use sick leave for any reason or allows employees on similar leave to use accrued sick leave. See id.

The district permits its employees to use sick leave only when the person suffers from an illness or accidental injury. The Pennsylvania School Code requires the school district to pay an

at employee full salary for a period of ten days per school year where the employee "is prevented by illness or accidental injury from following his or her occupation." 24 P.S. § 11-1154. Moreover, the collective bargaining agreement covering Spadoni's employment required an employee utilizing sick days to provide, upon request, "a physician's certificate for any absence of more than three consecutive days." See Trial Brief of Defendant, Easton Area School District at Ex. E at 9, Collective Bargaining Agreement October 2004, Spadoni v. Easton Area Sch. Dist., No. 07-5348 (Pa. E.D. filed Oct. 30, 2008) [hereinafter Oct. 2004 CBA]. The CBA allows employees to collect payment for unused sick days only upon retirement, see Oct. 2004 CBA at 28, and Spadoni received this entitlement when he retired.

Spadoni's claim appears to be derived from a military pamphlet describing USERRA, which states "[m]embers are permitted to use paid time off days (PTO, i.e., vacation, personal time, sick leave) during military service." See Uniform Services Employment and Reemployment Rights Act JFT GTMO Office of Staff Judge Advocate ¶ 6, Spadoni's Brief at Ex. 2. Implementing federal regulations, however, contradict this brochure by stating that an employer is not required to allow employees on military leave to use accrued sick time. See 20 C.F.R. § 1002.153(a).[3]

Spadoni also cites various decisions he claims justify including accrued sick leave as a

---

[3] In addition, business commentators have characterized "paid time off" as distinct from "sick leave." Paid time off programs "replace[] traditionally distinct programs–vacation, sick days, personal days, salary continuation programs and (in some cases) certain holidays–with a single block of time." See Steven F. Cyboran and Thomas M. Morrison, Jr., Paid Time Off Programs: Giving Employees More Control over Leave, Society of Human Resources Management (SHRM), Sept. 2006, at 2, available at, http://www.segalsibson.com/publications/articles/Paid_Time_off_Programs.pdf; see also B. Victor Pfeiffer, Paid Time-Off Programs Save Time and Money, Wash. Bus. J., July 3, 1998, available at http://www.bizjournals.com/washington/stories/1998/07/06/focus6.html.

benefit because the cases liberally interpret the term "benefit of employment."  See Spadoni's Brief at 6-7.  For example, in Maxfield v. Cintas, 427 F.3d 544, 552 (8th Cir. 2005), the court held an undesirable transfer to a less stable position without the eligibility for performance-based bonuses, constituted a denial of a benefit.  The court relied on Hill v. Michelin North America, Inc., 252 F.3d 307, 312 (4th Cir. 2001), which found "a more regular schedule is properly viewed as an advantage of the job under USERRA's definition of 'benefit of employment.'"  See Maxfield, 427 F.3d at 552 (quoting Hill, 252 F.3d at 312).  In addition, in Maxfield, because the plaintiff's supervisor had informed him the plaintiff had violated company policy when he requested emergency and vacation leave while on military leave, the case discussed the plaintiff's ability to use sick leave.  See id. at 553.  The employer, however, had a policy permitting employees to take sick or emergency leave while on military leave.  Id.

      Similarly, in Keohler v. Pepsi, 2006 WL 2035650, at *3-4 (S.D. Ohio July 18, 2006), the court found the employer denied the plaintiff a "benefit of employment" when it withdrew from the plaintiff's bank account an amount equal to the pay differential between his salary and military pay while the plaintiff was on reserve duty.  The employer in Keohler, however, had a policy of providing a benefit equal to the difference between an active-duty employee's military pay and the employee's company salary.  Id. at 4.

      Finally, in Vickers v. City of Memphis, 368 F. Supp. 2d 842, 843 (W.D. Tenn. 2005), the plaintiff claimed he was subjected to harassment and a hostile work environment because he was called derogatory ethnic names due to his military service and referred to as "Habib."  The court found "USERRA provide[d] a cause of action for harassment due to prior military service."  Id. at 845.  On a motion to dismiss, the court reasoned the plaintiff's claim of harassment and hostile

6

work environment could be a denial of a "benefit of employment" if the plaintiff established the employer had a policy which prohibited the such harassment.  Id.

These cases are distinguishable.  Unlike the employers in Maxfield, Keohler, and Vickers, the district did not have a policy which provided the claimed benefit, i.e., the district did not permit employees on military or similar leave to use their accrued sick leave.  In addition, unlike the plaintiff in Maxfield, not permitting Spadoni to use sick leave while on military leave did not deny him a job advantage he held prior to his deployment.

Viewing USERRA as Spadoni advocates would require the district to offer Spadoni an enhanced privilege not available to any other district employee.  No district employee enjoys unrestricted access to accrued sick leave while on unpaid leave.  An employee receives payment for unused sick leave only upon retirement.  See 2004 CBA at 28, 9.  Congress intended employees on military leave to enjoy a level playing field in the workplace; it did not create privileges not otherwise available to all employees.  Cf. 38 U.S.C.A. § 4316(b)(a)(B) (employee on military leave is "entitled to such rights and benefits" provided to "employees having similar seniority, status and pay who are on furlough or leave of absence.")

B.   Salary Calculation

Spadoni also alleges he was denied a benefit of employment because prior to his deployment he received a bi-weekly salary of $2,387.00, but upon his return from military duty he received a bi-weekly salary of $1,626.77.  See Spadoni's Brief at 8.  At the time Spadoni returned from military service, employees could elect to receive either 21 or 26 paychecks.  See Oct. 2004 CBA at 12.  Thus, the employees would receive their annual salary over the ten-month school year or over the twelve-month calendar year.  Spadoni had elected to receive 26 pay

checks. He claims his $62,083.00 annual salary should have been divided by the 26 pay periods, and, therefore, he should have received a $2,387.00 paycheck for the ten pay periods remaining after his return from active duty. See Reply of Plaintiff to Trial Brief of Defendant at 2, Spadoni v. Easton Area Sch. Dist., No. 07-5348 (E.D. Pa. filed Nov. 25, 2008). The district, however, prorated his salary based on the number of school days he worked in the 2004 through 2005 school year. Spadoni worked only 49 of the 187 days in the school year, i.e., 26.2% of the school year. See Stipulated Factual Record at ¶ 18. The district, therefore, paid Spadoni 26.2% of his $62,083 annual salary, i.e., $16,267.74, resulting in $1,626.77 bi-weekly paychecks for the remaining ten pay periods.[4] See Ex. D-1, Ex. D-2; Stipulated Factual Record at ¶ 24.

At first blush, the salary differential appears to be a denial of benefit, i.e., payment of a decreased salary upon Spadoni's return from active military duty. Receipt of a guaranteed bi-weekly salary, however, was not a benefit of employment enjoyed by Spadoni or other employees. The district did not have a policy requiring payment of a bi-weekly salary based on the full school year. Rather, it paid an annual salary and computed the salary of its employees who work for less than a full year on a prorated basis. See The District's Brief at Ex. D at 16, Collective Bargaining Agreement April 2001 to August 2004 [hereinafter CBA 2001 through Aug. 2004]; Oct. 2004 CBA at 11 ("where less than one full year of service occurred, the step place advancement shall be factionalized for each month or major portion thereof"). If an employee worked only part of the year, his annual salary was prorated based on the number of days the employee worked during the school year. See February 3, 2009 Hearing Transcript.

---

[4] Because 49 is not evenly divided by 187, the percentage (26.2%) was rounded to the nearest decimal place for this opinion. The district's calculations were based on the full calculated percentage.

8

The prorated salary was divided by the number of bi-weekly pay periods remaining. Id.

Spadoni was not a part-time employee. Because Spadoni was deployed on active military service, however, he did not work a full school year for the 2004 though 2005 year. He worked only 49 of the 187 school-year days (26.2% of the school year). See Stipulated Factual Record at ¶ 9. Pursuant to its policy, the district prorated Spadoni's salary and, over the remaining ten pay periods, paid him 26.2% of his annual salary, resulting in ten $1,626.77 paychecks. See Ex. D-2.

The district's policy, at times, could be applied unevenly, but in a manner favorable to employees on military leave. For example, if Spadoni was deployed for only the summer months, he would have received his full annual salary because, presumably, he already would have worked all 187 school days. Similarly, if he had been deployed in November and had not returned that same school year (ending in June), he already would have received his full bi-weekly salary from the beginning of the school year until his November deployment.[5] These discrepancies do not, however, establish the district denied Spadoni a benefit or that it discriminated against him because of his military service.

Spadoni also alleges that, because the district originally prorated his $500 longevity stipend, but later reconsidered and paid the entire amount, it is precluded from prorating his full annual salary. See Spadoni's Brief at 9. The salary and the stipend are distinct payments for different service. The 2004 CBA provides "[a]n annual longevity payment of $500 will be paid to teachers who have 25 up to 30 years of service to the district." See Oct. 2004 CBA at 14. The

---

[5] It is unclear whether the district would have demanded return of any overpaid amounts he collected from the beginning of the school year through his deployment. There was no evidence the district has ever been confronted with a salary proration issue for previously paid wages.

longevity stipend is an entitlement bonus for a career of teaching service. The annual salary is a part of a contractual bargain based on daily teaching service during a 187-day school year. The contract expressly addresses how teachers who work only a partial year shall be compensated. See Oct. 2004 CBA at 11; CBA 2001 through 2004 at 16. Spadoni presented no evidence establishing the district uses a similar computation for longevity stipends as it does for salary, and the record contains no evidence suggesting the longevity stipend can be reduced depending on the number of days worked per year.

Moreover, even if receipt of the same bi-weekly salary could be viewed as a benefit of employment, Spadoni failed to prove the district discriminated against him based on his military status. See Hart, 228 Fed. Appx. at 162 (plaintiff must establish his "military service was a substantial or motivating factor" in the employment decision). In 2003-2005, the district followed its policy of prorating an employee's salary for all the district employees who took unpaid leave, including Spadoni. See Ex. D-1, D-2; Feb. 3, 2009 Hearing Testimony. Spadoni did not receive less favorable treatment than any employee on unpaid leave for non-military reasons.

Although Spadoni and another district employee had previously been paid the full, non-prorated salary for some military leave, the district limited those payments to military leave lasting less than 30 days in accord with state law. See Feb. 3, 2009 Hearing Testimony. Each employee on military leave receives 15 days of paid military leave per calendar year. See Stipulated Factual Record at ¶ 9. In addition, Lori Fulmer, a district human resources officer, testified the district provides 30 days paid military leave, i.e., employees who take military leave for 30 or less days will receive paid leave. See Feb. 3, 2009 Hearing Transcript. The prior leaves

were generally within this 15-day or 30-day period.  See Ex. D1, Ex. D2.[6]

Accordingly, the district did not deny Spadoni a benefit of employment.  Even if the salary was a benefit of employment, the district did not deny this benefit based on Spadoni's status as a member of the active military service.

An appropriate order follows.

---

[6] To the extent any paid leaves exceeded 30 days, such evidence does not prove the district discriminated against Spadoni in this case.